If I could please call the first case, and the only case. Case number 12, case 2459, Peoples v. Anthony Johnson. Okay, would the lawyers who are going to argue the case please approach and introduce yourselves. Chief Administrator, it's on behalf of the appellant, defendant Anthony Johnson. Good morning, Your Honor. It's Peter Fisher, an Assistant State's Attorney, on behalf of Peoples. Let's proceed. Thank you, Your Honor. Your Honor, Anthony Johnson, no person is entitled to a perfect trial. But everyone is entitled to a fair trial. Two trials... You know, before we get into that, is there any evidence here at all that this defendant was involved in this? Involved in this case? The evidence is slight and weak. Well, when you say it's slight and weak, what evidence is there? I mean, I'd like to know where it comes from. Well, first of all, there's two parts to that. First of all, the major evidence came from the witnesses Rufus Johnson and Nolan Swain, both of whom recanted their prior statements at trial. So the jury was faced with a situation where they were saying at trial, we don't know anything, we don't remember anything. The only reason we told things to the police was because we were threatened or hoped we would get a good deal. But what did their statements say that provided evidence that he was involved? As for Rufus Johnson, the only thing was that he said that Johnson said... Rufus Johnson was not present during any of this. He said later, Anthony Johnson said, we busted a move. And that's it. That's all Rufus Johnson contributed. We busted a move. And that statement, as Johnson himself said, was ambiguous. It could mean... I mean, how is that evidence that he was involved? I don't think it is. I think it is... So when you say the evidence was weak, are you saying there's no evidence at all, or are you saying it's weak? Well, I think it's weak. I mean, what... If it's weak, it's enough for the jury to make a finding, isn't it? Well, I think the jury under these circumstances, given the errors, was confused and misled on a number of points, both by the failure to instruct and by prosecutorial argument. But, continue, there's two points. One is... But I still haven't heard from you, where is this evidence that he was involved? The only evidence is he was in the car. There's some evidence that he drove away. There's some evidence that he was told to follow the car and follow the car. I think that's it. In terms of what his mental state was, whether he knew that this person was armed, whether he knew a murder was going to take place, whether he knew a killing was going to take place, our contention would be there was virtually zero evidence of that. And, for that reason, this Court held, in the first case, the Rule 23, that the evidence was closely balanced, for a good reason. Because you have two problems here. One problem is the weakness of the witnesses. And the second is, everything that is contributed does not establish accountability, certainly beyond reasonable doubt. So, with these two problems, the evidence is quite, quite weak. I think the State's position is the evidence is based on Rufus Johnson's recanted statement, Nolan Swain's recanted statement, and that's about it. In fact, when Anthony Johnson was questioned by the police, by Detective Winstead, he was let go, presumably as a witness and not as a defendant. So, the evidence was very weak, and that's why the errors become so significant. Now, let me talk about some of the errors, if I may, in the case. One is a failure to... Well, you know, you keep falling back on the fact that the evidence was weak, and that's why the errors are significant. But I think what Justice Gordon is trying to get you to is your separate argument that you make in your brief that there was a failure to prove the defendant guilty beyond a reasonable doubt. And that has nothing to do with the errors. Oh, I understand that. So, I think that's what Justice Gordon is asking you to speak to. Okay. Well, what we would say is, just in the Phillips case, basically what you have is somebody in the car, driving the car, crime is committed, and there's some evidence, which is contested, that he drives the person away. So, it's our argument that this case is on par with Phillips, and that there isn't proof beyond a reasonable doubt. Now, the counter to that is based upon... Well, I mean, I think that's basically it. I mean, even if you take Nolan Swain and Rufus Johnson at their word, or as their prior work before they testified, that's what you've got. And we suggest that the single ambiguous statement, we bust a move, does not establish that either Johnson knew that there was a gun, knew that the person was armed, knew that there was a killing, or helped with the killing before he knew about it. So, for those reasons, we would ask that there be a finding of not guilty. Now, if I've sufficiently answered those questions, I would like to move on to what the errors would be, assuming the court did find that there was proof beyond a reasonable doubt, or that a rational trier of fact could find proof beyond a reasonable doubt. One is the failure to give an instruction on what's the Romance Dennis Principle, that a murder ends with the killing, with the death, and that things that happen afterwards cannot, in and of themselves, establish criminal liability. And that's a principle that's existed for quite a while, in this case at least. Now, obviously, it would be a major ruling of this court to hold that this instruction should be given, but it should be given. And I'll tell you why. You can see, by the arguments in this case, that the jury was easily confused on this issue, because there is a fine line between arguing, he must have known about it because he drove away, and he's guilty because he drove away. And if you look at... Well, the first jury was confused. Where is there evidence that this jury was confused? I think our point is that there is a grave danger of confusion in every case of this sort. And you can tell by... Well, my question is, where is there evidence that this jury was confused? This jury did not ask questions. So there's not a doubt...  Well, they're confused because if they listen to the prosecutor's arguments, particularly the arguments where objections were overruled, they could easily conclude that just driving away was sufficient. For example, prosecutors... Well, isn't that speculation? I don't think so. I think it's based upon a reasonable inference of what the prosecutor said, what the judge ruled, and what happened when the jury found the defendant guilty. When Prosecutor McCarthy said, you know, you can't just say, I drove there and I drove away, and she said that at points she argued that's equivalent to guilty. At points she argued something else. But many of her comments, there was objections overruled. Similarly, the defense sought to, based upon Anthony Johnson's statements, the defense sought to say, listen, if he did drive him away, it was because at that point he knew he was armed and he was afraid of him, which is what Johnson told the police. Prosecutor Valentini said, well, that's the defense the Nazis used at Nuremberg. And that was extremely confusing to the jury, and that was an objection overruled, by the way. That was extremely confusing to the jury because that's not what he was saying. He was saying if you think he's morally guilty for driving away, this is the reason he drove away. He never said compulsion is a defense to murder. And the jury, not being instructed as the proper way to regard flight, would be confused if they followed the judge's instructions, if they listened to the prosecutor's arguments, and if they acknowledged what the judge said when he overruled the objections. Is there any evidence that the defendant committed any act during what you would consider to be the offense under Dennis? No. In our opinion, no. There is no evidence of that at all. Let me ask you this. Isn't there some evidence, maybe you can tell me what you think of this, you can remind me where this is, but there's some evidence that the defendant, while in the car, shouted out to the shooter, come on, let's go, or I'm waiting for you, or something like that, while the shooting was still occurring. While the shooter was running away and firing back at the car. Now, you'd have to say at least that while the shooter's running away and firing back at the car, that's during the offense. Well, it depends whether the victim was killed before or after. We don't really know that, do we? We don't. The jury could reasonably, based on the evidence, conclude that that force that was being used, that shooting, which accomplished the killing, was still going on as the shooter ran away from the car. Now, what do you make of the evidence that the defendant was exhorting the shooter, come on, I'm not going to wait for you forever. Is that some type of encouragement during the crime? Is that some type of backup? What is that? Your Honor, it is extraordinarily ambiguous, and that's why there's a reasonable doubt as to his guilt. Because we don't know if the victim was dead, we don't know at what point in the shooting that occurred, we don't know what his intention was in saying, come on, get in, or I'll leave you behind. So, therefore, we don't think it's proof beyond reasonable doubt, and certainly indicates a closely balanced case, if that's what the state is going on. I would also like to comment on the Clayton-Sims cross-examination, if I may, and some of the errors that flow out of that, because I think these are extremely serious. Clayton-Sims... You know, you're running out of time, and I think maybe you want to comment on what's happened in the closing arguments instead of that. Absolutely. Well, the closing arguments included things such as saying finding not guilty would be a mockery, that the first jury would be sick to their stomach if they knew what had happened, that this would be a trend, let's not make this a trend of lying, that you might as well legalize drive-by shootings. I mean, this was a free-for-all. And many of the comments were objected to, and objections were overruled. And I think the last thing I wanted to say, because I didn't respond in my reply brief to this, is that the prosecutor says, well, Judge Hill looked at all this, he considered this, and he said, no error. And frankly, I think that's the most disturbing thing possibly in the entire case, because if Judge Hill had remembered, and he was reminded of this, he sustained objection to the sick to the stomach comment. So it couldn't possibly be that the prosecutors did nothing wrong. And for Judge Hill to say that all of these things, you know, he could have said something like, well, that might have been wrong, but there was no objection, that might have been wrong, but the evidence was overwhelming, et cetera. Instead, he made a strong point of saying, these prosecutors did absolutely nothing wrong, and he implied that the bringing up these errors amounted to making frivolous arguments or making frivolous accusations, which could damage prosecutors' careers and reputations. If the standard here is abuse of discretion, and we maintain that at Zunova, but if the standard were abuse of discretion, this was certainly abuse, because apparently he didn't even recognize what had happened in the closing argument and in the cross-examination of Clayton Sims. Particularly given how closely balanced the case was, this cannot fail to be error and cannot fail to justify reversal. All right, why don't you save some time for rebuttal. Thank you. Again, good morning, Your Honors, and may it please the Court. Let me ask you a question right off the bat. Is it ever okay to compare a defendant to the Nazis at Nuremberg? He wasn't being compared to the Nazis at Nuremberg, Your Honor. Isn't that what he said? No, it's not what he said, I'm sorry, but he said that the defense that the defendant was asserting, the sort of compulsion, or I was following orders defense, did not work for the Nazis at Nuremberg. He wasn't saying the defendant was a Nazi. There's no comparison to the defendant's acts and the acts of the Nazis. He was not making a moral equivalence argument. Isn't it kind of dangerous to talk about a defendant in reference to Nazis? It can be in certain instances, Your Honors. I've never seen an instance when it wasn't. Well, clearly, the one mention of the word Nazis was not the straw that broke this camel's back. And is it ever okay to say to the jurors, if you don't acquit, you might as well legalize drive-by shootings in this town? Is that the type of thing that the state's attorney's office is going to do, to push the envelope when you don't have to? I think when you realize that that comment came after a summation and a discussion of all the evidence in the case, which was not. But my question is, is it ever okay to do that? Yes. You can do that? Yes. In the context, the state's attorney did that, that's okay. When he says, when he outlines the evidence and says that this is murder in this case, this is a drive-by, this is accountability, and to say something else is to urge the, you know, this is to urge the fearless administration of justice, and this kind of comment can't. Was it also permissible for the prosecutor to say that Sims lied at the first trial when he didn't take the stand at the first trial? It is permissible in the context of what the prosecutor was saying. You have to remember here that the defendant opened the door to comments about what happened at the first trial. If you'll recall, when Clayton Sims was on the stand, his lawyer asked him, did you testify at your trial? Did you plead not guilty? Did you go to trial? Were you found not guilty? And frankly, it's very obvious what Clayton Sims was doing here. He had no jeopardy attached. He had no repercussions and he went to a lawyer, found out, you know, I can say basically anything I want. I can go in there and they can't do anything to me. Is that correct? My question is all these comments. Was it permissible to tell the jury that there was no bystander that the state knew of when the state called the bystander at the first trial? Isn't that a lie? No, because what he's saying is that no bystander was there when I came back. And when I came back, not only the shooter, but the car was gone. So there was no bystander who could tell this jury anything that was in the mind of the defendant. Because he didn't say the defendant was there. So no, there is no bystander. Because the defendant's defense really wasn't I wasn't there. His defense was what I did didn't constitute murder. So no, that bystander wasn't there. So the prosecution could do no wrong no matter what they say. I didn't say that, Your Honor. There was a comment that the objection was sustained and therefore cured. The other comments, the vast majority of comments as we detailed point by point in our brief, were not objected to, were not in the post-trial motion. They are therefore waived. Again, putting this case into context, Your Honor. I mean, taking all these things together, do you feel that this defendant received a fair trial? Absolutely, Your Honor. Absolutely. In America or where? Absolutely in Cook County, here in America. In Cook County? Yes, sir. And that's still in America? Yeah, I believe so, yes. All right. And this defendant did in fact receive a fair trial. This defendant was in fact guilty of murder. There was certainly more evidence than defense counsel will have you believe today. This defendant knew there was a gun in the backseat. He said to Rufus Johnson that he knew that Clayton had a gun or unit on him. He knew that he was strapped with a gun. When he's later describing what happened to Rufus Johnson, he uses the word we. We busted a move. We clearly indicated that he knew what was going on. We have evidence from Nolan Swain that says that the shooter yelled, that's the guy who shot me. Chase him. So there's this chase that comes by. He cuts off the victim's car. He waits while the defendant, the co-defendant, gets out of the car, starts shooting. The co-defendant, when he took the stand, would have you believe that this was one pull of the trigger at one place. All the bullets came out. But it's clear from the physical evidence  continued at two places. It continued down the block. As they're continuing down the block, the defendant yells to the, during the course of this shooting, yells to the co-defendant, come on, get in the car. Clearly, this is not Phillips. In Phillips, there's no evidence, according to the court, that the defendant knew that the co-defendant had a gun. There is evidence in this case that the defendant knew the co-defendant had a gun. There is evidence in this case the defendant knew that they were going to commit a crime. Defendant tells the police. Another thing counsel didn't point out is the fact that the defendant makes statements to the police. He places himself there. He places himself in the car. He says that I told the co-defendant to hurry up and come on and get in the car. He also says he knew that the co-defendant What do you think the significance of that is? Hurry up and come on and get in the car. Well, I mean, a jury is perfectly capable of seeing that the defendant intended to drive him away from the scene. That this was, you know, he knew that maybe the police were coming. You know, he had seen him shoot. He didn't disavow the action. He didn't drive away. He didn't say, oh my God, I didn't know this guy was going to get out and shoot somebody. He lets him get back in the car. And the notion that I understand that this question is in a vacuum, but hurry up and get in the car. Is that something that occurs during the commission of the offense? It might be. It can be. But I don't think we even need to have just that as you mentioned. It's not in a vacuum because we do know that the defendant knew there was a gun in the car. So, it's another piece. And I just look at the Reed case and the Illinois Supreme Court talks about the things that you can consider when discussing legal responsibility. His presence during the commission of the offense. He admits that. His failure to prevent the incident from occurring. He doesn't prevent it from occurring. He provides the car there and the car away. Flight from the scene. Failure to report the incident to the police in any attempt to conceal weapons. We have all of those factors from People v. Reed in this case. And that's why this whole discussion of the jury instruction that wasn't given is actually beside the point. First of all, as your Honor has pointed out, this is not the same trial as the first trial. This jury did not send out a note saying we're confused. The standard accountability jury instruction was given here. That's proper. There's nothing improper about that jury instruction. And in fact, if you look at the proposed instructions the defendant wanted, he wanted a romance dentist. But that's really about the felony murder escape rule. That's really not about accountability. And the discussion in romance dentist talks about the difference between those two scenarios and explains basically that the instruction that they wanted was really the felony murder escape rule. And romance dentist makes that clear.   is the statement that they, the instruction that they wanted was part of the law, but not all the law. It didn't include those two scenarios. It didn't include those things that I've discussed here in People vs. Read. And those are circumstantial pieces of evidence that were present in this case that show that the defendant was accountable for this crime. And if you wanted to give another instruction had the jury asked, you would have had to give the whole law. You couldn't just give little pieces of the law and that would have actually been more confusing. But the bottom line is in this case, of course, the jury did not send out any notes and did not express any confusion whatsoever. For the reasons that we've stated here today and the reasons that we've stated in the brief, we'd ask that your honors affirm the defendant's conviction in this case. Let me ask you a fat question. Sure. I want to make sure. The statement that's the guy who shot me, was that made prior to the shooting or was that, isn't there some evidence that that was made after the shooting as well? I think there's evidence that it was both. But the statement by Nolan Swain in the car is that's the guy that shot me and then they chased the thing. Then afterwards there was also a statement about, you know, he'd shot me a couple of months ago. That's the guy who shot me. He didn't care about me. I don't care about him. He didn't care about me. You know, the defendant admits to the police that he knew that the co-defendant had been shot by a guy named B but he thought it was a different guy named B and so he was surprised when the co-defendant shot the actual victim who was named B. His nickname had a B tattoo on his arm. So, there certainly was evidence that the defendant, even in the statement of Nolan Swain, he talks about driving recklessly, they pull a U-turn on the street, they chase the guy down several streets, they cut him off. So, clearly, this is an attempt to chase someone and the defendant himself says to the police that he thought at one point, this is going to be cool because I'm going to get a new set of rims or something because he thought they were going to do a carjacking. Well, even if that's his thought, that is still accountability for this murder because under the common design, under the Terry rule, he doesn't have to intend that the murder took place, but of course, he knew there was a gun. And so, the facts in this case are not Phillips, they're more like the Taylor case that we cited in our brief, and in that case, the defendants own statements where he places himself with knowledge. He won't admit to knowing there's a  but he certainly told Rufus Johnson that there was a gun. Thank you, Your Honor. Thank you, Mr. Chief. Your Honor, just so that there's no confusion as to some of the facts, I was just looking over pages 13, 14, and 15 of the prosecution's brief, where they ably summarized what the defendant told Winstead. One of the things he told Winstead was that he had that acquaintance and said he wanted to go buy marijuana. And he did not tell Winstead he knew there was a gun. He did say earlier he knew that Sims had picked up a gun and then he thought he had given it to his cousin. And according to what he told him, he had given it to his cousin. He did not   that he had given it to his cousin. He did not tell The only reason he did not tell him that he had given   was because he did not tell him that he had given it to him.